Elmer J. FAUL and Sybell E. Faul,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 15987.

United States Court of Appeals
Ninth Circuit.

Feb. 17, 1959.

Heisler & Stewart, Francis Heisler, Charles A. Stewart, Carmel, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Loring W. Post, Grant W. Wiprud, John J. Pajak, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before FEE, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Before us in this case is a petition to review decision of the Tax Court of the United States. The sole question on this review is whether the finding of the Tax Court that petitioner Elmer J. Faul did not perform services as an informer [1] covering a period of 36 calendar months or more (from the beginning to the completion of such services) is clear error, and hence that petitioner is not entitled to income allocation benefits under Section 107(a) of the Internal Revenue Code of 1939.[2]

It is to be noted that one seeking the benefits of Section 107(a) must meet three requirements: First—at least 80 per cent of the total compensation must be received or accrued in one taxable year. Petitioner met this requirement. He received an informer's award from the United States Government in the amount of $68,837.96 in April of 1952. Second—the compensation received or accrued must be for personal services. The Tax Court did not reach or pass on this requirement because of its views that its finding adverse to the petitioner on the third requirement was dispositive of the case. Third—the services must cover a period of 36 months or more from the beginning to completion of such services.

---

1. Internal Revenue Code of 1939, Section 3792, 26 U.S.C.1952 Ed., Section 3792.

Sec. 3792. "Expenses of detection and punishment of frauds. The Commissioner, * * * with the approval of Secretary, is authorized to pay such sums, not exceeding in the aggregate the sum appropriated therefor, as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law."

T.D. 5379, 144 Cum.Bull. 479:

"Under and by virtue of the provisions of section 3792 of the Internal Revenue Code * * * the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, does hereby offer for information that shall lead to the detection and punishment of persons guilty of violating the internal revenue laws, or conniving at the same, such reward as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall deem suitable, but in no case exceeding 10 per cent of the net amount of taxes, penalties, fines and forfeitures which, by reason of said information, shall be paid irrecoverably to the United States through suit or otherwise. Any person furnishing such information shall be eligible for reward under this Treasury decision unless he was an officer or employee of the Department of the Treasury at the time he came into possession of his information or at the time he divulged it.

"The rewards hereby offered are limited in their aggregate to the sum appropriated therefor and shall be paid only in cases not otherwise provided for by law.

"Claims for reward under the provisions hereof shall be made on Form 211, * * * * "

2. Sec. 107 (as added by Sec. 220(a), Revenue Act of 1939, c. 247, 53 Stat. 862, and amended by Sec. 139(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798, and by Sec. 119, of the Revenue Act of 1943, c. 63, 58 Stat. 21), 26 U.S.C. § 107.

"Compensation for services rendered for a period of thirty-six months or more and back pay.

"(a) Personal services.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

The Tax Court found that the services performed by petitioner did not cover a period of 36 months. From this finding, the Tax Court concluded that the informer's award received by petitioner could not be allocated ratably over a period of 36 months.

The Commissioner requests in his brief that should this Court disagree with the Tax Court's decision then the case be remanded to the Tax Court for consideration and ruling on the second requirement of Section 107(a), which the Tax Court did not reach or pass upon.

In the posture of the review before this Court, the question to be decided by this Court is an extremely narrow one. It boils down to the question as to whether or not the work or effort of petitioner prior to February 22, 1947 constitutes "services" within the meaning of that word as used in Section 107(a). We are not called upon to pass on the meaning of the term "personal services" as used in the section because the Tax Court deemed it unnecessary to reach the question as to whether or not the services performed by petitioner were "personal services".

Petitioners, formerly husband and wife, were divorced after the filing of the petition in this case before the Tax Court. Petitioners are residents of the State of California, and filed their joint income tax return for the year 1952 with the District Director of Internal Revenue, San Francisco, California. Hereafter Elmer J. Faul will be referred to as petitioner, and Sybell E. Faul will be referred to as the wife.

The facts leading up to the payment of the informer's award are as follows: From approximately February 1941 to March 1946, petitioner was employed full-time as office manager by the R. E. Myers Co., of Salinas, California. The R. E. Myers Co. was a subsidiary of the Salinas Valley Ice Co. Ltd. Following 1942, petitioner spoke to his immediate employer, Ralph Myers, about the fraudulent manner in which the books and records of the company were being maintained, and warned him of the danger of exposing himself to tax fraud charges.

Petitioner further stated to Myers that he did not wish to remain in the employment and expose himself to tax fraud charges. Myers treated the objections of petitioner lightly, and informed petitioner that he did not have to do the book work and that he would get someone else to do such work. Thereupon the corporation hired Emmett Gottenberg, a certified public accountant, to keep the books and tax records and to prepare the tax returns for petitioner's employer. Petitioner continued to worry about his own exposure to fraud charges which might be brought against his employer, and in 1944 went to San Francisco and talked to "some government man" to find out just what he should do to protect himself. Petitioner was told that he should make records and have evidence to prove that he was not involved in any fraud. In February or March of 1944 petitioner commenced to compile records of his employer's transactions and false entries, which was done at home or late at night in his employer's offices, and petitioner continued with this record making for the remainder of 1944, and during 1945 and part of 1946. In March of 1946, petitioner was discharged by the Myers Company because of his interference with the bookkeeping activities of his employer.

Petitioner then determined to submit evidence of alleged fraud of his employer to the government, and on February 22, 1947, the petitioner and wife went to San Francisco, where petitioner had an interview with John Boland, chief field deputy in the office of the Collector of Internal Revenue, San Francisco, California. At that time petitioner submitted to Boland a memorandum of 45 alleged violations of the Internal Revenue law by petitioner's employer; and on the same day petitioner filed a claim for the informer's reward on Form 211. Boland told petitioner that he would have to have more information, and also advised petitioner that revenue agents would contact him. In May of 1947, Internal Revenue Agent Shurlock commenced an audit of the books and records of the petitioner's em-

ployer. Petitioner supplied additional information between April and July, 1947, thus increasing the list of alleged violations to a total of approximately 68 or 70. The revenue agents contacted petitioner during the summer and fall of 1947. According to Shurlock's testimony the last discussion between him and petitioner concerning information supplied by petitioner was in September or October or November, 1947. Shurlock submitted his final report in July 1948, and the case was then forwarded to the Conference Section in San Francisco. Shurlock discussed the case with the conferee a number of times, and to the best of Shurlock's knowledge petitioner never met nor had a conference with the conferee. The case was closed in 1950.

In May 1951, petitioner and wife visited Boland in San Francisco, but the wife was unable to testify as to any conversation which took place between Boland and petitioner. During 1950 and 1951 petitioner corresponded with officials in the Bureau of Internal Revenue, Treasury Department, concerning his claim for reward, and in letter by petitioner dated March 27, 1950, to the Commissioner of Internal Revenue, he stated, "I was in San Francisco last Friday—March 24th, 1950, and I contacted Mr. O'Connell whom suggested that I write you direct to ascertain present status of this case. Mr. O'Connell as his local representative Alan Shurlock conferred with me numerous times during first 2 years after I reported this case for information. At the time I reported this case originally to Mr. Boland I signed a paper protecting me for claim when this matter was thoroughly investigated and settled so please let me hear from you in the near future, as over 3 years have elapsed and I thought it surely must be settled by now." (Sic)

On September 10, 1951, the Administrative Assistant Secretary of the Treasury Department wrote to petitioner informing him that "It has been necessary to request additional information from the Field Office in California, and your case cannot be concluded until that information is received at headquarters." There is no evidence in the record that petitioner supplied any additional information, or was requested to do so.

In April 1952, petitioner received a check from the United States Government in the amount of $68,837.96, as an informer's award.

The events set forth above appear in the record before the Tax Court with little, if any, conflict. Other events, however, occurred or didn't occur about which the parties are in dispute. The petitioner, because of illness, did not testify at the hearing before the Tax Court, and many claimed events were testified to by the wife. The wife testified that revenue agents visited petitioners' home concerning the tax fraud case during the years 1947, 1948 and 1949. The testimony of the wife was vague and indefinite as to the dates of such visits in 1948 and 1949, and she was unable to testify as to the subject matter of conversations between petitioner and the revenue agents. Agent Shurlock testified that he visited petitioner in 1948 and 1949 at petitioners' home, and at least once during 1950 and 1951. He testified that such visits were social, and discussions would relate to reminiscences of the case, when petitioner might collect his reward, and the penalty that might be assessed on petitioner's employer. There is nothing in the record to indicate that on such visits petitioner furnished Shurlock any additional information, or that Shurlock requested additional information from the petitioner.

The Tax Court found that the services performed by petitioner began February 22, 1947, being the date on which petitioner furnished specifications of alleged violations to Mr. Boland, and filed his claim for the informer's award on Form 211. The Tax Court found that the services performed by petitioner were completed in the fall of 1947. We are satisfied from an examination of the entire record that the finding of the Tax Court that the services were completed in the fall of 1947 finds ample support in the record. The Tax Court heard the

witnesses, judged their credibility, re-solved the conflict in the testimony as to the time of completion of the services, and under such circumstances this finding of the Tax Court is binding on us.

The question remaining is: Did the services performed by petitioner commence on February 22, 1947, or in March 1944? The Tax Court concluded "that petitioners have not shown Faul to have rendered any service to the Bureau of Internal Revenue before February 22, 1947." The Tax Court found, following the visit of petitioner to San Francisco in 1944, where he talked to "some government man" about what he should do to protect himself, and who advised him to make records and have evidence so he would not be exposed, that " * * * Faul, working in his home and in the office late at night, commenced to compile records in February or March of 1944. He continued with this record making for the remainder of 1944 and during 1945 and part of 1946." It was the view of the Tax Court that this work of petitioner was done "in order to shield himself". The Tax Court necessarily concluded that the work performed by the petitioner from February or March of 1944 until February 22, 1947 did not constitute "services" as that word is used in Section 107(a), for otherwise the services performed by petitioner would have covered the period from March 1944 to October or November, 1947—a period of 42 or 43 months.

The word "services" is not defined in Webster's International Dictionary, Second Edition, but the word "service" is defined as "performance of labor for the benefit of another or at another's command; the occupation, condition or status of a servant." In the light of the context in which the word "services" is used in Section 107(a), it would appear that Congress intended to restrict the meaning of that word to work done for compensation, since the purpose of the section is to ratably allocate compensation for personal services covering a period of 36 months or more when at least 80 per cent of such compensation is received or accrued in one year. An individual does not compensate himself for work or services performed for the benefit of himself. Congress recognized a distinction when it enacted Section 107 (b)[3] which deals with the allocation of income received by an individual from a literary, musical or artistic composition, or a patent or copyright, the work on which by such individual covers a period of 36 calendar months or more from the beginning to completion of such composition or invention. The time, effort and talent devoted by the author or the inventor to the production of the composition or patent is referred to in Section 107(b) as "work" and not "services", and the fruits of such work are referred to as "income" and not "compensation".

The record in this case is clear that the services performed by petition-

3. Sec. 107(b) "Patent, copyright, etc. For the purposes of this subsection, the term 'artistic work or invention', in the case of an individual, means a literary, musical, or artistic composition of such individual, or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period of the period preceding the close of the taxable year but not more than thirty-six calendar months." Internal Revenue Code of 1939, 26 U.S.C. § 107 (b).

er from February or March, 1944, to February 22, 1947, were performed for his own benefit and purpose. The character of such services was not changed when petitioner furnished information to Mr. Boland, and filed his claim for an informer's award on February 22, 1947. T.D. 5379 (supra) is an offer to pay a reward for "information". Neither is the character of such services changed by the fact that the United States used or was benefited by the information furnished by the petitioner, which he had gathered prior to February 22, 1947 for his own use and purpose.

The law is well settled that when a taxpayer seeks the remedial benefit of Section 107(a), the burden of establishing that he is entitled to such benefit rests upon the taxpayer. Section 107(a) is a special exemption from the general principle that a taxpayer on a cash basis must report his income for the year when it is received, and the taxpayer must come squarely within the letter and spirit of the law if he is to derive the benefits thereof. Lindstrom v. Commissioner of Internal Revenue, 9 Cir., 149 F.2d 344; Van Hook v. United States, 7 Cir., 204 F.2d 25, certiorari denied 346 U.S. 825, 74 S.Ct. 42, 98 L.Ed. 350; Sloane v. Commissioner of Internal Revenue, 6 Cir., 188 F.2d 254; Smart v. Commissioner of Internal Revenue, 2 Cir., 152 F.2d 333, certiorari denied 327 U.S. 804, 66 S.Ct. 962, 90 L.Ed. 1028.

We agree with the Tax Court's finding that petitioner did not perform services covering a period of 36 calendar months or more. While it is not necessary to our decision, we perhaps should add that we are not in any manner passing upon the question as to whether or not the informer's award received by petitioner constitutes compensation for personal services within the meaning of Section 107(a).

The decision of the Tax Court is affirmed.