COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

BRITISH MOTOR CAR DISTRIBUTORS,
LTD., a corporation, Respondent.

No. 16432.

United States Court of Appeals
Ninth Circuit.

March 31, 1960.

Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Frederic T. Leo, San Francisco, Cal., Clyde C. Sherwood, Mountain Ranch, Cal., for the respondent.

Gibson, Dunn & Crutcher, F. Daniel Frost, John J. Waller, Norman B. Barker, Los Angeles, Cal., amicus curiae.

Before POPE, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

■ The taxpayer corporation incurred losses while engaged in the business of selling home appliances. It disposed of all its assets and the corporate shares were then sold to new owners, who used the corporation to operate a previously going automobile business. The question here presented is whether the taxpayer is entitled to carry over the losses incurred in the old business, where it is clear that the principal purpose of the acquisition of the taxpayer by the new owners was to avoid taxes. The Tax Court, five judges dissenting, ruled in the affirmative, 31 T.C. 437 (November 26, 1958), and the Commissioner has appealed. We here hold that carry-over of the loss is forbidden under § 129(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 129(a) (added by Chapter 63, 58 Stat. 47, 1944).[1] The judgment of the Tax Court accordingly must be reversed.

Empire Home Equipment Company, Inc., was incorporated under the laws of California on November 13, 1948. Empire engaged in the business of selling home appliances at wholesale and retail. During its fiscal years ending in 1949, 1950 and 1951, Empire incurred net operating losses in the sum of $374,406.57. In December, 1949, Empire's lease of its premises at 40 Drumm Street in San Francisco was cancelled. Unamortized leasehold improvements were written off by January, 1950. In February, 1950, its merchandise inventory was liquidated in bulk at a considerable loss. All of its furniture and fixtures were sold by February 20, 1950. On April 1, 1950, its accounts receivable were sold. On its tax return for the fiscal year ending October 31, 1951, Empire reported its assets as "Nil."

British Motor Car Company was a partnership consisting of Kjell H. Qvale, who had an 85 per cent interest, and his wife, who had a 15 per cent interest. The partnership had existed from about May 1, 1948, and engaged, in San Francisco, in the business of importing, distributing and selling foreign automobiles and parts. On September 11, 1951, the partnership submitted an offer to counsel for the Empire Home Equipment Company, in which the former offered to buy the outstanding stock of the corporation from its then owners for $21,250.00, upon the conditions, inter alia, that the corporation would increase its authorized capital and change its name. The offer was accepted. On November 2, 1951, Empire changed its name to British Motor Car Distributors, Ltd. On November 30, 1951, the partnership acquired all the outstanding shares of stock and immediately thereafter transferred its net assets (exclusive of the acquired shares) to the corporation in exchange for an additional 15,923 shares of stock. It is not claimed that there was any business purpose in the acquisition.

In the tax years ending October 31, 1952, and October 31, 1953, the corporation operated profitably in the automobile business. In its income and excess profits tax returns for those years, it carried forward the net operating losses that it had sustained in the appliance

---

1. Section 129(a): "Disallowance of deduction, credit, or allowance. If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation."

business in its fiscal years ending in 1949, 1950 and 1951.

The Commissioner disallowed the claimed deductions and gave notice of deficiency. The corporation then petitioned the Tax Court for a redetermination.

The Tax Court, in its construction of § 129(a), adhered to its view as expressed in T.V.D. Company, 27 T.C. 879, 886,[2] following the dictum in Alprosa Watch Company, 11 T.C. 240, to the effect that "it is manifest from the unambiguous terms of § 129 that it applies only to an acquiring corporation." The court points out that here the corporation is seeking to make use of its own previous loss; that it is the corporation, and not its new stockholders, which is securing the benefit of the deduction. Alprosa Watch is quoted to the effect that § 129 (a) "would seem to prohibit the use of a deduction, credit or allowance only by the acquiring person or corporation and not their use by the corporation whose control was acquired."

We do not read the language of the section, "securing the benefit of a deduction," as applying only to the actual taking of such deduction by the taxpayer. We should be closing our eyes to the realities of the situation were we to refuse to recognize that the persons who have acquired the corporation did so to secure *for themselves* a very real tax benefit to

be realized by them *through* the acquired corporation and which they could not otherwise have realized.

This is not, as the corporation protests, a disregard of its corporate entity. Since § 129(a) is expressly concerned with the persons acquiring control of a corporation, we must recognize such persons as, *themselves,* having a significant existence or entity apart from the corporation they have acquired. To ignore such independent entity simply because such persons are also the stockholders of their acquisition is to ignore the clear demands of § 129(a). It is not the fact that they are stockholders which subjects them to scrutiny. Rather, it is the fact that they are the persons specified by the section: those who have acquired control of the corporation. They may not escape the scrutiny which the section demands by attempting to merge their identity with that of their acquisition.

Section 129(a) contemplates that it shall not be limited to corporate acquirers. While Clause (2) is specifically limited to corporate acquirers, Clause (1) deals with "persons" as acquirers. That Clause (1) is to include noncorporate acquirers could not be more clearly implied. Nor do we find any sound reason, if this device for tax avoidance is to be struck down, for doing the job only when the tax avoider is a corporation. Legislative history indicates that a much broader construction was intended.[3]

2. This case involved an attempt to *tax income* to an acquired corporation which had been merged into the acquirer. No question of disallowance of losses was before the court. In W.A.G.E., Inc., 1952, 19 T.C. 249, and in A.B. & Container Corporation, 1950, 14 T.C. 842, also referred to by the Tax Court, business purpose was expressly found.

3. H.R. No. 871, 78th Congress, First Session (1944 Cum.Bull. 901, 938):

"This section is designed to put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability.

"The crux of the devices which have come to the attention of your committee

has been some form of acquisition on or after the effective date of the Second Revenue Act of 1940, but the devices take many forms. Thus, the acquisition may be an acquisition of the shares of a corporation, or it may be an acquisition which follows by operation of law in the case of a corporation resulting from a statutory merger or consolidation. The person, or persons, making the acquisition likewise vary, as do the forms or methods of utilization under which tax avoidance is sought. Likewise, the tax benefits sought may be one or more of several deductions or credits, including the utilization of excess profits credits, carry-overs and carry-backs of losses or unused excess profits credits, and anticipated expense of other deductions. In the light of these considerations, the

To limit the effect of § 129(a) to cases in which the taxpayer is seeking to deduct as its own a loss incurred by another would seem to limit Clause (1) to corporate acquirers. Who but a corporation could claim as its *own* a loss which had been incurred by an acquired corporation? Certainly an individual could not do so. The construction here contended for by the taxpayer corporation would then clearly frustrate legislative purpose.

Such construction is not the necessary result of the language used. To construe "benefit" as limited to the taking of the deduction; or "deduction" as limited to one claimed by the acquirer is to read something into the section which is not expressly there and which serves to prevent its application in an area clearly intended to have been included.

 The corporation contends, as stated by the Tax Court, that the benefit to the stockholders (as distinguished from that to the corporate taxpayer) (is too tenuous to bring the section into play. Tenuous or not, it is the benefit which actuated these persons in acquiring this corporation and is thus the very benefit with which this section is concerned. It is not for the courts to judge whether the benefit to the acquiring persons is sufficiently direct or substantial to be worth acquiring. That judgment was made by the acquirers. The judicial problem is whether the securing of the benefit was the principal purpose of the acquisition. If it was, the allowance of the deduction is forbidden. See: Mill Ridge Coal Co. v. Patterson, 5 Cir., 1959, 264 F.2d 713; Tarleau, Acquisition of Loss Companies, 1953, 31 Taxes, The Tax Magazine, 1050.

section has not confined itself to a description of any particular methods for carrying out such tax avoidance schemes but has included within its scope these devices in whatever form they may appear. For similar reasons, the scope of the terms used in the section is to be found in the objective of the section, namely, to prevent the tax liability from being reduced through the distortion or perversion effected through tax avoidance devices."

Judgment reversed. The deductions claimed by the taxpayer are disallowed and judgment is entered for the Commissioner.

The taxpayer corporation contends that the Conference Report, H.Rep. 1079, 78th Congress, Second Session (1944 Cum. Bull. 1069) shows a narrowing of the intendment of the section. However, reference to Sen.Rep. 627, 78th Congress, First Session (1944 Cum.Bull. 973, 1016–1018) clearly shows that restriction on the sweep of the house bill was confined to the elimination of overlaps with existing sections and the formulation of a standard for "control" and that the spirit of the measure was left unaffected.