**F. C. PUBLICATION LIQUIDATING CORPORATION, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 267, Docket 27310.

United States Court of Appeals Second Circuit.

Argued May 24, 1962.

Decided June 29, 1962.

Laurence F. Casey, New York City (Brown, Wood, Fuller, Caldwell & Ivey, New York City, on the brief), for petitioner.

Carolyn R. Just, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Loring W. Post, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and SMITH and MARSHALL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Taxpayer petitions this Court to review a decision of the Tax Court reported in 36 T.C. 836 (1961), upholding a determination of the Commissioner with respect to deficiencies in federal corporate income taxes for the fiscal years ended March 31, 1954, March 31, 1955, and for the short taxable year April 1 to June 7, 1955, in the total amount of $230,625.69 plus additions to tax in the amount of $2,028.78. Jurisdiction is conferred upon this court by Section 7482 of the Internal Revenue Code of 1954.

The only question presented is whether the decision of the Tax Court that the loss carry-over deductions claimed by the

taxpayer under Sections 122 and 172 of the Internal Revenue Code of 1939 and 1954, respectively, should be disallowed under the provisions of Sections 129 (a) [1] and 269(a) of the 1939 and 1954 Codes, respectively, because the principal purpose in the acquisition of Park Magazine, Inc. was the purchase of a loss carry-forward. We agree that the disallowance was correct and affirm the decision of the Tax Court.

Park Magazine, Inc. was incorporated in New York on April 10, 1949, for the purpose of publishing a magazine called "Park East." The corporation sustained net operating losses for the taxable years ended March 31, 1951, 1952, 1953 totaling $743,722.60. The authorized capital stock consisted of 100 no par value shares, which immediately prior to the merger involved herein, were all held by Ernest Lilienthal.

The Family Circle, Inc. was incorporated in Delaware on November 19, 1939, and from its inception until June 30, 1953 its common stock was held by some 12 shareholders. The corporation published "The Family Circle" magazine which was distributed by direct sale to 14 large grocery store chains which in turn sold the magazine to their customers. Family Circle, Inc. was a corporation which had assets of approximately $3,000,000 and had earned for the seven months prior to the merger $443,079.58.

The two corporations consolidated on June 30, 1953, Park Magazine being the surviving corporation with its name changed to The Family Circle, Inc. Petitioner's authorized capital was increased to 2,000 shares, $100 par value, 6% cumulative preferred and 100,000 shares of $1 par common. Lilienthal exchanged his 100 shares no par common for 1,500 shares of the preferred and the previously outstanding common stock of the "acquired" corporation was exchanged for 87,084 shares of the $1 par common. There was an attempt to publish a continuation of "Park East" and in this connection $152,921.99 was expended (total post merger income was $24,754.-85 including subscriptions of $16,754.-39, $10,526 of which was attributable to post merger subscriptions). In December of 1953 petitioner decided to discontinue publication of "Park East" which was proving to be a more costly venture than had been anticipated.

Petitioner contended in the Tax Court that although the tax loss carry-over was considered, the principal motivation was that it was felt to be a good opportunity to get into a new area of magazine publishing which would produce considerable revenue.

Appellant strongly urges that the risk of loss in the transaction is too great compared with the possible tax gain, and that responsible business people do not take such chances, so that the principal purpose cannot have been the tax gain. A fairly strong case is made that the possible gain from tax savings is disproportionately small. The balance of the argument, however, has its weaknesses. Business people, even very successful business people, do make mistakes, particularly where an apparently effortless gain from the Government is in sight. An equally permissible inference which may be drawn from the evidence is that a business error was made, that the cost of carrying on a minimum Park East project was underestimated, and the certainty of the loss allowance was viewed too sanguinely. Most important,

1. Sec. 129 [as added by Sec. 128(a), Revenue Act of 1943, c. 63, 58 Stat. 21]. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS PROFITS TAX. "(a) Disallowance of deduction, credit, or allowance. If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation * * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * * [So far as here applicable, section 269 of the 1954 Code contains no substantial change.]" (26 U.S.C.1952 Ed., § 129.)

the testimony and contemporaneous writings of the petitioner's editor make it quite plain that the anticipated tax result was the prime factor in the acquisition.

The fact that Endicott, upon whose testimony the Tax Court relied, was a discharged, possibly hostile ex-employee, goes merely to credibility which is a question for the trier of fact to determine, Gatling v. Commissioner, 286 F.2d 139 (4 Cir. 1958); Clark v. Commissioner, 266 F.2d 698 (9 Cir. 1959); Faul v. Commissioner, 263 F.2d 645 (9 Cir. 1959); Seletos v. Commissioner, 254 F.2d 794 (8 Cir. 1958). His testimony is no more unbelievable, as a matter of law or logic than that of Lieberman, who stands to lose $20,000 by an unfavorable decision and whose self-serving testimony is urged upon us.

The taxpayer also urges reversal on the grounds that the Tax Court committed error in finding that "Family Circle, a corporation acquired control of Park Magazine" since it is undisputed that Park Magazine, Inc. acquired control of Family Circle, Inc. Although Park Magazine, Inc. was the surviving corporation, its name was immediately changed to Family Circle, Inc. which did possess control of the magazine "Park East" after the merger. Therefore, the court may well have been referring to the fact that Park East, the magazine, was acquired, or retained by the surviving corporation which was The Family Circle, Inc. In any event § 129 is applicable when a "loss" corporation acquires control of a "profitable" corporation since the acquiring corporation thereby secures the *benefit* of a loss it would not otherwise have enjoyed. See Urban Redevelopment Corp. v. Commissioner, 294 F.2d 328, 332-33 (4 Cir. 1961); Thomas E. Snyder Sons Co. v. Commissioner, 288 F.2d 36 (7 Cir. 1961), cert. denied, 368 U.S. 823, 82 S.Ct. 41, 7 L.Ed.2d 28; James Realty Co. v. United States, 280 F.2d 394 (8 Cir. 1960); Commissioner v. British Motor Car Distributors, Ltd., 278 F.2d 392 (9 Cir. 1960); Mill Ridge Coal Co. v. Patterson, 264 F.2d 713 (5 Cir. 1959); Coastal Oil Storage Co. v. Commissioner, 242 F.2d 396 (4 Cir. 1957), and consequently such error could in no way prejudice petitioner.

The judgment of the Tax Court is affirmed.