FARMERS STATE BANK & TRUST COMPANY V. LEE BRADY, BANKING COMMISSIONER OF TEXAS.

No. 7830. Decided June 18, 1941.
(152 S. W., 2d Series, 729.)

J. L. Walsh, Jr., of Dallas, for relator.

Gerald C. Mann, Attorney General, Geo. W. Barcus, Assistant Attorney General, for respondent.

MR. JUDGE SLATTON, of the Commission of Appeals, delivered the opinion for the Court.

The Farmers State Bank & Trust Company seeks by its petition filed in this Court a writ of mandamus to require Honorable Lee Brady, Banking Commissioners of Texas, to proceed with the liquidation of the assets of the First State Bank, Westhoff, Dewitt County, Texas.

It appears that on the 8th day of September, 1928, the then Banking Commissioner of Texas closed and took charge of the First State Bank, Westhoff, Dewitt County, Texas, for the purpose of liquidation because said bank was insolvent.

That relator was a common creditor of said insolvent bank in the sum of $2917.48, which claim was duly filed with and allowed by the Banking Commissioner.

That the Commissioner proceeded to liquidate the affairs of said bank and paid dividends to the extent of 61% of the amount due the common creditors, leaving an unpaid balance owing relator in the sum of $1137.81.

That on the 3rd day of February, 1933, at the instance of the Commissioner, an order was entered by the district court of Dewitt County, Texas, as follows:

"It is, therefore, Ordered, Adjudged and Decreed by the Court that the report of James Shaw, Banking Commissioner of Texas, of expenses paid, sales of assets made, receipts had, and all disbursements made during the entire course of this liquidation, be and the same is hereby approved in all things.

"It is further ordered, adjudged and decreed by the court that James Shaw, Banking Commission of Texas, be and is hereby authorized to distribute $19,403.86 to the general creditors, after deducting therefrom a sufficient sum of money to defray necessary expenses incident to compiling this report, the distribution of the dividend and disposing of the remaining assets, or as much more as he may be able to pay from the effects now or hereafter coming into his hands. This dividend to be paid in one or more installments as to him may seem best, and at such times as convenient.

"It is further Ordered, Adjudged and Decreed by the court that James Shaw, Banking Commissioner of Texas, and all of his successors in office, be and are hereby discharged from further custody of this Court, such discharge, however, being without prejudice of his or their rights to marshal any and all known or unknown assets whenever and wherever found, and prosecuting any and all suits or to take any other action necessary in the premises, in accordance with his or their statutory duty, under such cases made and provided.

"It is further Ordered, Adjudged and Decreed by the Court that James Shaw, Banking Commissioner of Texas, be and is hereby authorized to sell at private or public sale all of the

remaining assets, and report said sale to the Court for approval. That in the event no purchaser can be found for these remaining assets, after making this last effort to dispose of them, Petitioner is hereby authorized to charge the remaining assets to Profit and Loss, thereby disposing of all the remaining assets.

"It is further Ordered, Adjudged and Decreed by the Court that Charter heretofore issued and existing in the name of First State Bank, Westhoff, DeWitt County, Texas, be and is hereby annulled and the corporate existence of this bank be and is hereby dissolved. J. P. Pool, Judge 24th Judicial District of Texas."

That since the entry of the above order there has come into the hands of the Banking Commissioner from the assets of the First State Bank, Westhoff, Dewitt County, Texas, the sum of $2914.07 and other assets of unknown value.

The present Banking Commissioner refused to further proceed with the liquidation of said assets now in his hands because it was claimed by his predecessors in office that the order above quoted deprived them of authority to make distribution of said funds and "that the only thing the Banking Commissioner can do is to hold said fund as trustee until a court of competent jurisdiction orders and directs him to pay same to some party or parties entitled thereto."

The board of directors, acting under Article 450, Revised Civil Statutes 1925, placed the bank in the hands of the Banking Commissioner for liquidation. The Banking Commissioner in office at the time of the liquidation proceeded to liquidate without notifying the Attorney General, as was within his discretion.

The Commissioner is authorized to collect monies, claims and debts due the bank and to liquidate its affairs, Article 453, Revised Civil Statutes 1925. The Commissioner may sell or compound all bad or doubtful debts and may sell real or personal property of the bank by the order of the district court of the county in which the bank is located. Article 454. The Commissioner must give notice to creditors and accept the claims of such creditors. Article 456. The Commissioner must answer objections to claims of creditors and submit the matter to the district court. Article 458. The Commissioner must accept or reject claims of creditors and rejected creditors must file suit within six months after their claims have been rejected. Article 459. The Commissioner is required to make reports to

the district court or judge showing his expenses of liquidation, etc. Article 462. The Commissioner is required to pay dividends on approval of the district court. Article 463. The Commissioner is required to file ·with the district court of the county in which the bank is located or the judge thereof, if the court is in vacation, a final report of such liquidation for the approval of the court or judge, and upon approval thereof the charter of such bank shall thereupon be forfeited without judicial ascertainment. Article 369a.

It is seen from the foregoing statutes that the Commissioner of Banking was acting in this liquidation as a statutory receiver, not by appointment of the court, but in virtue of the above statutes. Many of his acts in the liquidation of the affairs of the bank were in conjunction with the district court or judge, or at least subject to the approval of the district court or judge. It may be true that the Commissioner who filed the report above quoted intended that the same be a final report. However, by express language the order provided that the same was entered "without prejudice of his or their rights to marshal any and all known or unknown assets whenever or wherever found, and prosecuting any and all suits or to take any other action necessary in the premises, in accordance with his or their statutory duty." The order further authorized the Commissioner to sell and report the sale to the court for approval any and all remaining assets. It was the Commissioner's statutory duty under Article 453, above mentioned, "to liquidate the assets of such·insolvent bank." It cannot be said that the Commissioner's statutory duty has been performed untill all of the assets of the bank have been disposed of and the proceeds thereof delivered to the ones legally entitled to the same. The so-called final order of the court which was entered at the request of the Commissioner recognized this and made provisions for further handling of the known and unknown assets of the insolvent bank. We are of the opinion that the order quoted above did not have the legal effect of depriving the Commissioner of his statutory authority and duty to liquidate the known and unknown assets of the insolvent bank and to make disbursement of the money now in his hands under further orders of the district court of Dewitt County or the judge thereof, as provided by the statutes above mentioned. The fact that it is contemplated by Article 369a that upon the closing of a liquidation the Banking Commissioner shall file a final report with the district court, etc., and upon approval of same the charter of the bank shall thereupon be forfeited

without necessity of judicial ascertainment, which was done in the present case, can make no difference in the disposition of the question now before us for the reason that the statutory authority and duty of the Banking Commissioner to liquidate. the affairs of an insolvent banking corporation cannot be superseded or ended by a premature forfeiture of the charter of said bank. The order of the court providing for the discharge of the Banking Commissioner and his successors in office, cannot have the effect of relieving the Commissioner and his successors in office of complete liquidation of the affairs of the insolvent bank, because such authority is not derived from the court. Like the Commissioner, the court or the judge in a liquidation such as this has no more authority than is provided or implied by the statutes. We have found no statute and have been cited to none requiring the district court or the judge to discharge the Banking Commissioner. It is our opinion, therefore, that the order above quoted does not relieve the Banking Commissioner of his statutory duty to liquidate the affairs of the insolvent bank.

The term "liquidate" as used in the statute means to "determine by agreement or by litigation the precise amount of (indebtedness or damage) ; or, where there is an indebtedness to more than one person to determine the precise amount of (each indebtedness) ; * * * to discharge; to pay off, as an indebtedness; to ascertain the amount, or the several amounts, of the liabilities of (a corporation, an estate, etc.,) and apportion the assets toward the discharge of the indebtedness, as in winding up a corporation." Webster's New International Dictionary.

So long as there remains in the hands of the Banking Commissioner assets belonging to the insolvent bank, under the statutes quoted it is the statutory duty of the Banking Commissioner to liquidate such assets in accordance with the law.

It is therefore ordered that the writ of mandamus issue in accordance with the prayer of the relator.

Opinion adopted by the Supreme Court June 18, 1941.