The SOUTHLAND CORPORATION,
Appellant,

v.

Ellis CAMPBELL, Jr., District Director of
Internal Revenue, Appellee.

No. 22476.

United States Court of Appeals
Fifth Circuit.

March 28, 1966.

**334**

Stanley C. Simon, Webster Atwell, Atwell, Grayson & Atwell, Dallas, Tex., for appellant.

Melvin M. Diggs, U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson Harry Baum, Fred R. Becker, Attys., Dept. of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Fred R. Becker, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HUTCHESON and BELL, Circuit Judges, and FISHER, District Judge.

HUTCHESON, Circuit Judge:

The Southland Corporation (Southland) claims a net operating loss deduction from its income for calendar years 1957 through 1960 inclusive. Southland is the successor, through a series of corporate manipulations not here relevant, of three now non-existent corporations: Caribbean Shipping Company (Caribbean or Loss Corporation); Cabell's Inc. (Old Cabell's or Profit Corporation); and the surviving corporation from the merger of these two, which retained the name Cabell's Inc. (New Cabell's or Surviving Corporation). The net operating losses upon which the carry over deductions are based were sustained by Caribbean in the years 1954 through 1956 while it was engaged in the shipping business. During 1956 Caribbean discontinued shipping operations, acquired controlling interest in Old Cabell's, merged Old Cabell's into itself, and continued the business previously conducted by Old Cabell's. From the profits subsequently generated by this business, the Surviving Corporation carried over and deducted Caribbean's pre-merger losses. The Commissioner denied the claimed carry over deductions on the ground that they are the result of an "acquisition made to evade or avoid income tax" and thus are disallowed under Int. Rev. Code of 1954 Sec. 269. The

court below upheld the Commissioner's determination. For the reasons hereinafter stated, we hold that this ruling must be vacated and the case remanded for further proceedings.

The facts upon which application of this complicated Code section was based are even more complicated. A number of transactions important to the final decision of the case occurred; each transaction, and the corporations involved therein, will be separately stated in an attempt to insure a full understanding of the facts and of our decision.

On January 18, 1954, Caribbean was incorporated under Florida law with capital stock of 1000 shares of $1 par value. On January 30, Jack Frierson and Murchison Brothers (a partnership composed of John and Clint Murchison) each purchased 500 shares for the stated par value. The purpose of this investment was to establish a shipping company. Thereafter Murchison Brothers advanced large amounts of money to Caribbean and guaranteed loans made to it in order that Caribbean could begin, and later continue, shipping operations. Subsequently Murchison Brothers had to make good all of the loans it had guaranteed for Caribbean. This venture was a total failure; for the calendar years 1954, 1955, and 1956, Caribbean suffered net operating losses of $182,363.46, $67,-579.45, and $986,853.34, respectively. In 1955 and 1956 Caribbean discontinued shipping operations and by June 30, 1956, had disposed of substantially all of its operating assets. However, Caribbean's stockholders did not intend to liquidate or dissolve the corporation, but rather wanted to keep it alive and to utilize its losses.

Old Cabell's was a well established and apparently quite profitable corporation in the dairy and grocery business. Murchison Brothers was the major stockholder and owned, as of September 26, 1955, 44.9 percent of the outstanding stock. As of the same date Earle Cabell owned 25.3 percent of the outstanding stock. No other stockholder owned as much as 10 percent of the outstanding stock.

During the summer of 1956 the possibility of a merger of Old Cabell's with Caribbean arose. On June 20, 1956, the directors of Old Cabell's considered this possibility.

On July 11, 1956, Murchison Brothers purchased additional shares in Old Cabell's from the estate of a small minority stockholder. This purchase brought Murchison Brothers' ownership to 50.4 percent of the outstanding stock in Old Cabell's.

On July 27, 1956, Caribbean adopted a recapitalization plan. Frierson's 500 shares were converted into 500 shares of voting prior preferred, redeemable after December 1, 1959. Murchison Brothers' 500 shares were converted into 20,000 shares of voting convertible preferred and 60,000 shares of new common.

On August 17, 1956, Murchison Brothers contributed to Caribbean the indebtednesss due from it for advances and loans made good by Murchison Brothers, totalling $1,320,439.45. At the same time Murchison Brothers contributed to Caribbean its stockholdings of 55,580 shares in Old Cabell's.

During September, 1956, negotiations continued regarding the merger of Caribbean and Old Cabell's. On September 6, 1956, at the insistence of Earle Cabell and as a condition to his approval of the proposed merger, Murchison Brothers donated back to Caribbean 5,714 shares of voting convertible preferred and 4,420 shares of common, thus reducing its stock ownership in Caribbean to 14,286 shares of voting convertible preferred and 55,-580 shares of common. Subsequently the board of directors and the stockholders of both Caribbean and Old Cabell's approved the merger of the firms effective October 1, 1956. Pursuant to the merger agreement:

(1) Caribbean was the surviving corporation;

(2) all outstanding shares of Caribbean continued as such;

(3) the 55,580 shares of Old Cabell's owned by Caribbean were cancelled;

(4) the remaining shares of Old Cabell's (totalling 54,080) were converted into 54,080 shares of Caribbean common; and

(5) the name of the surviving corporation was changed to Cabell's, Inc.

The Surviving Corporation, New Cabell's, continued only grocery and dairy operations. These operations maintained their pre-merger profitable performance. The net operating losses sustained in shipping operations in 1954, 1955, and 1956 were carried over as net operating loss deductions [1] against the profits from grocery and dairy operations in 1957 through 1960, inclusive. During this period taxpayer Southland acquired control of and succeeded New Cabell's, and thereby became liable for the tax deficiencies assessed by the Commissioner upon his disallowance of the claimed net operating loss deductions.

■ As its title denotes, Section 269 [2] is designed to prevent "[a]cquisitions made to evade or avoid income tax". However, the section is applicable only in certain carefully circumscribed situations—it may be invoked only where there has been an acquisition of *control,*

the *principal purpose* of which is evasion or avoidance of taxes.[3]

■ Initially Southland emphasizes that the Loss Corporation (Caribbean) continued after the merger and is now merely utilizing loss deductions otherwise available to it because of its previous operations. From this it concludes that Sec. 269 does not apply since there has been no "securing the benefit of a *deduction,* credit, or other allowance which such person or corporation *would not otherwise enjoy.*" (Emphasis added.) At this date there can be no real dispute as to whether the identity of the surviving corporation controls the applicability of Sec. 269. Notwithstanding earlier cases to the contrary,[4] it is now well settled, as recently stated by the Second Circuit, that Sec. 269 "is applicable when a 'loss' corporation acquires control of a 'profitable' corporation since the acquiring corporation thereby secures the *benefit* of a loss it would not otherwise have enjoyed." F. C. Publication Liquidating Corp. v. Commissioner, 304 F.2d 779, 781 (2d Cir. 1962).[5] We fully concur in this statement and therefore reject Southland's first argument.

---

1. Int.Rev.Code of 1954 Sec. 172.

2. The statute in force during the years in question provided: Sec. 269. *Acquisitions made to evade or avoid income tax.*

  (a) *In general.*
  If—
  (1) any person or persons acquire * * * control of a corporation, or
  (2) any corporation acquires * * * property of another corporation, not controlled * * * immediately before such acquisition, by such acquiring corporation or its stockholders, * * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such *deduction, credit, or other allowance* shall not be allowed. * * * [C]ontrol means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the

total value of shares of all classes of stock of the corporation.
The statute has been amended in part, but the changes made are not material to the present case.

3. See generally 7 Mertens, Law of Fed. Income Taxation Sections 38.65-.67 (1956) [hereinafter cited as Mertens]; 2 Rabkin & Johnson, Fed. Income, Gift and Estate Taxation Sec. 11.05 (1964) [hereinafter cited as Rabkin & Johnson].

4. Alprosa Watch Corp., 11 T.C. 240 (1948), was interpreted as determining *that a corporation is entitled to use its own deductions, etc.,* and establishing that Sec. 269 does not apply where the "loss" corporation makes the acquisition. Several subsequent decisions adhere to this view. See generally 7 Mertens Sec. 38.67; 2 Rabkin & Johnson Sec. 11.05[6].

5. The many cases refusing to follow Alprosa Watch and establishing the rule quoted from F. C. Publication are well documented in 7 Mertens Sec. 38.67 (Supp.1965); 2 Rabkin & Johnson Sec. 11.05[7].

■ The court below looked to the time at which Caribbean acquired control of Old Cabell's through the donation by Murchison Brothers to Caribbean of the controlling stock ownership in Old Cabell's, and found that the purpose of this donation was the avoidance of taxes through utilization of Caribbean's net operating losses.[6] Quite obviously the only possible purpose for the donation was to provide Caribbean with business profits with which to offset its previously incurred net operating losses. While the "principal purpose" requirement is thus fully satisfied, the "acquisition of control" requirement is not. At the time of the donation Murchison Brothers owned at least 50 percent of the outstanding stock of both Caribbean and Old Cabell's; thus immediately before Caribbean acquired control of it, Old Cabell's was controlled by the stockholders of Carribbean, and, therefore, under the express terms of the statute it is not applicable.[7]

■ The only "acquisition of control" during the period under consideration that might bring the merger within Sec. 269 is Murchison Brothers' acquisition of control of Old Cabell's through the purchase of a small amount of additional shares in that company in July, 1956. This transaction itself did not produce any tax benefit to Murchison Brothers; the further step of merging Old Cabell's with Caribbean was necessary before achieving this result. However the ac-

quisition of control of Old Cabell's could be viewed as an integral component of one plan ultimately leading to the merger and to the securing of the benefit of a deduction not otherwise available; in such a case Sec. 269 could properly be applied. J. T. Slocomb Co. v. Commissioner, 334 F.2d 269, 274 (2d Cir. 1964), especially note 3. Be this as it may, the district court did not hold that, and indeed did not consider whether, the principal purpose behind Murchison Brothers' acquisition of control of Old Cabell's was the evasion or avoidance of taxes. Application of Sec. 269 demands a finding to this effect, for otherwise an essential statutory requirement—principal purpose of tax avoidance—is missing.[8] Realistically it would seem that sound business practice, and not tax avoidance, dictated this action; through a relatively small additional investment Murchison Brothers not only purchased shares in a highly successful business enterprise, but also gained majority control, with all the benefits that go with such. The issue of "principal purpose" is one of fact. For us to hold that the "principal purpose" of this acquisition of control was "evasion or avoidance of Federal income tax", when the court below failed to consider this matter, and when the facts suggest a contrary conclusion, would be wholly inappropriate. In cases tried without a jury, Fed.R.Civ.P. 52(a) directs the district court to determine the essential facts upon which it bases its judgment;

---

**6.** In its opinion the court stated:

> * * * The purpose of this donation goes directly to the question involved, was the donation made to revive the shipping enterprise or for some other purpose. The purpose for which it was used was to base a claim for reduction of taxes.
>
> There appears nowhere in the record an indication that the donation was made for any other purpose. * * * [The donation] had a direct purpose and that purpose was looking to the merger and the merger made possible the claim that is now presented.

**7.** Section 269(a) (2), note 2 supra, restricts its applicability to the acquisition by one corporation of another corporation "not controlled * * * immediately be-

fore such acquisition, by such acquiring corporation *or its stockholders*." (Emphasis added).

See generally Maxwell Hardware Co. v. Commissioner of Internal Revenue, 343 F.2d 713, 720 (9th Cir. 1965); J. T. Slocomb Co. v. Commissioner of Internal Revenue, 334 F.2d 269, 274 n. 3 (2d Cir. 1964); Thomas E. Snyder Sons v. Commissioner of Internal Revenue, 288 F.2d 36, 38 (7th Cir. 1961), cert. denied, 368 U.S. 823, 82 S.Ct. 41, 7 L.Ed.2d 28 (1961); Jackson Oldsmobile, Inc. v. United States, 237 F.Supp. 779, 783 (M.D.Ga. 1964); Brick Milling Co., 22 Tax Ct. Mem. 1603, 1609 (1963).

**8.** See generally 7 Mertens Sec. 38.69; 2 Rabkin & Johnson Sec. 11.05[8].

where the trial court fails to do so, this Court cannot and will not make amends. S. S. Silberblatt, Inc. v. United States ex rel. Lambert Corp., 353 F.2d 545, 549–550 (5th Cir. 1965). Rather the case must be remanded to the district court with directions to make further and more specific findings of fact and to enter judgment accordingly.

We restrict our holding to the narrow conclusion that the district court's findings of fact are inadequate to support its judgment. We have not considered whether the "de facto dissolution" doctrine urged by the Government bars the claimed carry over loss deductions, nor have we considered whether Code Sec. 382 applies to the facts of this case. These matters may be presented to, and should be ruled on by, the district court upon the remand of this case.

The judgment is vacated and the cause remanded.