**VULCAN MATERIALS COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**Nos. 30116, 30117.**

United States Court of Appeals,
Fifth Circuit.

May 28, 1971.

Rehearing Denied June 25, 1971.

Lee C. Bradley, Jr., William B. White, Jr., Birmingham, Ala., for plaintiff-appellant.

Wayman G. Sherrer, U. S. Atty., E. Ray Acton, Asst. U. S. Atty., Birmingham, Ala., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Elmer J. Kelsey, Philip I. Brennan, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BELL, AINSWORTH and ALDISERT,* Circuit Judges.

ALDISERT, Circuit Judge:

Two principal issues are presented by these appeals from the district court's denial of federal income tax refunds: (I) whether organization or reorganization expenses incurred by appellant's predecessors, and concededly capital in nature and not deductible when incurred, became deductible upon the occurrence of statutory mergers carried out pursuant to 26 U.S.C. § 368(a) (1) (A); (II) whether appellant met its burden of overcoming the Commissioner's determination that one of its predecessors, Follansbee Steel Corporation, had acquired two other corporations for the principal purpose of tax avoidance. If appellant did not satisfy this burden, it is conceded that net operating loss carryovers were properly disallowed under 26 U.S.C. § 269(a) (2).

A stipulation of facts with accompanying documentary exhibits constituted the sole evidence at trial. No oral testimony was offered. The salient facts are summarized in the opinion of the district court, 308 F.Supp. 53, 54–55 (N.D.Ala. 1969):

On December 23, 1954, Consumers Company (Consumers) and Frontier Chemical Company (Frontier), both Delaware corporations, were merged into a third Delaware corporation theretofore named Follansbee Steel Corporation (Follansbee). Prior to the aforementioned merger, Follans-bee disposed of all of its operating assets. Upon merger, the corporation owned approximately nine million dollars in liquid assets and had an approximate six million dollar net operating loss. In the merger proceedings, the name of the surviving corporation was changed from Follansbee Steel Corporation to Union Chemical and Material Corporation (Union Chemical). On December 31, 1957, Union Chemical was merged into the plaintiff. Each of the aforementioned mergers constituted reorganizations within the meaning of Sec. 368(a) (1) (A) of the Internal Revenue Code of 1954 * * *.

In 1934, the predecessor of Consumers filed a petition in the United States District Court for the Northern District of Illinois for a reorganization under Section 77B of the Bankruptcy Act. During the period 1933 through 1937, various expenditures were incurred with respect to the reorganization and to the organization of the former corporation into Consumers. Likewise, Follansbee's predecessor filed a petition in bankruptcy in 1934 and in 1940 was reorganized into Follansbee Steel Corporation. In 1946, a further corporation merged with Follansbee and as a result of the reorganization and merger, expenses were alleged to have been incurred. Each of the aforementioned expenditures is conceded to be capital in nature and thus not deductible when paid or incurred.

On its 1957 corporate income tax return, Union Chemical deducted all of the aforementioned expenses. A subsequent audit resulted in the disallowance of these deductions, followed by a deficiency assessment totalling $369,-453.93 which was paid. A claim for refund of this amount was filed and thereafter rejected on the theory that the aforementioned expenditures were capital in nature and not deductible upon merger.

---

* Of the Third Circuit, sitting by designation.

The Internal Revenue Service further refused to make a refund based on a depletion allowance on the ground that plaintiff had improperly carried over Follansbee's premerger net operating losses in contravention of Sec. 269 of the 1954 Code. Although the deficiency which resulted from the carry-forward was not assessable due to the bar of the statute of limitations, it was nevertheless of sufficient size to offset any recovery to which the plaintiff might otherwise have been entitled. On March 24, 1965, plaintiff's claim for refund was formally rejected.

\*    \*    \*    \*    \*    \*

Prior to December 23, 1954, the date on which Consumers and Frontier merged into Follansbee, the latter corporation disposed of all of its machinery, tools, inventory, etc., which it used in its steel operation; hence, the corporation was but a mere shell. However, on the date of merger its sole possessions consisted of approximately nine million dollars in liquid assets and approximately a six million dollar net operating loss which it could not utilize due to the abatement of its operations. The companies which merged into Follansbee were engaged in the stone and chemical business. Following the merger, the new entity continued to operate profitably. In each of the years 1955, 1956 and 1957, portions of the pre-merger net operating loss suffered by Follansbee were used to offset the profits of the Consumers and Frontier enterprises.

## I.

### Reorganization Expenses

It is well established that recapitalization or reorganization expenditures of a corporation are not ordinary and necessary business expenses but rather capital expenditures which are not deductible when incurred. General Banc-

shares Corp. v. Commissioner, 326 F.2d 712 (8 Cir.), cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964); Bush Terminal Bldgs. Co. v. Commissioner, 204 F.2d 575 (2 Cir. 1953); Missouri-Kansas Pipe Line Co. v. Commissioner, 148 F.2d 460 (3 Cir. 1945). In Godfrey v. Commissioner, 335 F.2d 82, 85 (6 Cir. 1964), the court stated:

> An expenditure is of a capital nature "where it results in the taxpayer's acquisition or retention of a capital asset, or in the improvement or development of a capital asset in such a way that the benefit of the expenditure is enjoyed over a comparatively lengthy period of business operation." Louisiana Land & Exploration Co. v. Commissioner, 7 T.C. 507, aff'd. 161 F.2d 842, C.A. 5 [(1947)] \*  \*  \*.

While appellant concedes that the capital expenditures were not deductible when paid or incurred, the government acknowledges that capital expenditures of the nature here involved may be deducted upon the dissolution and liquidation of a corporation. Bryant Heater Co. v. Commissioner, 231 F.2d 938 (6 Cir. 1956); Commissioner of Internal Revenue v. Wayne Coal Mining Co., 209 F.2d 152 (3 Cir. 1954); Shellabarger Grain Products Co. v. Commissioner, 146 F.2d 177 (7 Cir. 1944); Koppers Co. v. United States, 278 F.2d 946, 150 Ct.Cl. 556 (1960); Pacific Coast Biscuit Co. v. Commissioner, 32 B.T.A. 39 (1935); Malta Temple Assn. v. Commissioner, 16 B.T.A. 409 (1929).

The issue here is whether the organization or reorganization expenses of appellant's predecessors may now be claimed as deductions, as urged by appellant, or whether the distinctions between dissolution and merger will preclude such deductions in a merger situation.

A statutory merger [1] effects a combination of two or more corporations in accordance with the detailed procedures established by the corporation laws of a state, with one of the corporations con-

---

1.  See 8 Del.Code Anno. § 251 et seq. and 14 N.J.Stat.Anno. 14:21–1 et seq. for the statutory provisions of the states in which the corporations were organized.

tinuing as the same legal entity it was before the transaction. Stated differently, a merger is

> the absorption of one corporation by another, which retains its name and corporate entity with the added capital, franchises and powers of the merged corporation. It is the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged therein.

15 Fletcher, *Cyclopedia of Corporations* § 7041. See Argenbright v. Phoenix Finance Co., 21 Del.Ch. 288, 187 A. 124 (1936); Fidanque v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311 (1952). Thus, the distinguishing characteristics of a merger are (1) an assumption by the surviving corporation "of all the rights and liabilities of the disappearing entitles," 2 Cavitch, *Business Organizations* § 167.07 [2], and (2) the cessation of the "separate existence of all the constituent corporations * * * except the one into which the other or others of such constituent corporations have been merged." 8 Del.Code Anno. § 259(a).

A corporate dissolution, on the other hand, represents the termination of the corporation's existence as a legal person. Once corporate existence ends, so do the privileges, powers, rights and duties which arose from corporate existence, except for specific purposes recognized by operation of law. 8 *Cavitch, supra,* § 185.02.

The term "dissolution" as applied to a corporation, signifies the extinguishment of its franchise to be a corporation and the termination of its corporate existence. It has been described as that condition of law and fact which ends the capacity of the body corporate to act as such and necessitates a liquidation and extinguishment of all legal relations existing in respect of the corporate enterprise. It denotes the complete destruction of the corporation, and, within contemplation of law, is equivalent to its death, being sometimes likened to the death of a natural person.

16A *Fletcher, supra,* § 7866.[2]

■ Thus, although in both a statutory merger and a dissolution the merged or dissolved corporate entity ceases to exist, fundamental distinctions inhere in the two processes. In a dissolution, the privileges, powers, rights and duties of the corporation come to an end and suffer a corporate death.[3] In a merger, these attributes of corporate life are transferred to the surviving corporation and are there continued and preserved. It has been said that "all 'rights, powers, liabilities and assets' [survive] except the 'indicia and attributes of a corporate body distinct from that into which it is merged.'" Citizens Trust Co. v. Commissioner, 20 B.T.A. 392, 393 (1930).

■■ Recognizing these distinctions, we accept the government's contention that the provision for deduction of capital expenditures upon dissolution of a corporation is not applicable when the corporation becomes a constituent of a surviving corporation in a merger. The organization and reorganization expenses

---

2. Dissolution and liquidation refer to entirely separate concepts: a liquidation has no direct effect upon the existence or nonexistence of the corporate entity; it concerns the settling of the corporate affairs, *i. e.*, gathering assets, accounting with creditors and debtors, and apportioning the profit or loss to its stockholders. Farmers' State Bank & Trust Co. v. Brady, 137 Tex. 39, 152 S.W.2d 729 (1941); In re Burger's Estate, 276 Mich. 485, 267 N.W. 887 (1936); Browne v. Hammett, 133 S.C. 446, 131 S.E. 612 (1926); Gibson v. American Ry. Express Co., 195 Iowa 1126, 193 N.W. 274 (1923).

3. "From the time of that entry [order of dissolution] the corporation has been dead, all its agencies ended, its employees, including attorneys, discharged: and is put, without exception or notice of appeal, beyond all future corporate activity." State ex rel. Attorney General v. Fidelity Loan & Trust Co., 113 Iowa 439, 440, 85 N.W. 638–639 (1901).

of the constituent corporations in the case at bar were clearly capital in nature. These assets were not lost but were continued beyond the corporate existence of the constituent corporations and persisted as capital assets of the surviving corporation. So construed, the expenses were not deductible.[4]

## II.

### Operating Loss Carryover

Appeal No. 30,117 [5] requires us to decide whether the net operating loss incurred by Follansbee Steel Corporation in its taxable year 1954, which was not absorbed by its taxable income or that of its successor Union Chemical and Material Corporation in taxable years prior and subsequent thereto, was allowable to Union Chemical as a deduction for its taxable year 1957 pursuant to 26 U.S.C. § 172. The Commissioner disallowed the deduction by reason of section 269(a) (2),[6] finding that the principal purpose

of the merger of Follansbee (the loss corporation) and Consumer and Frontier (profit corporations), was to utilize the net operating loss of Follansbee to offset future income of the surviving corporation.

Follansbee discontinued its steel operations and sold its assets prior to the merger in 1954. Thus, by the time of the merger it had become a non-operating corporation with liquid assets of $9,000,-000.00, and a net operating loss of $6,-000,000.00 resulting from the sale of assets. Follansbee successfully claimed the carryback against income earned and reported in taxable years prior to 1954 as a deduction under Section 172. What the Commissioner challenged was the attempt by Union Chemical, the successor corporation after the merger, to take advantage of the loss carryback of Follansbee.

Immediately prior to the merger, Frontier was actively operating in the field of chemicals, and Consumer in

4. Another point was raised for our consideration in the appeal at 30,116: whether payment by Consumers Company, a predecessor corporation, to the state of Illinois, allegedly for the privilege of doing business, qualifies as a deduction. Upon proof that payment was made to the State of Illinois for that purpose and that such right was duplicative or no longer necessary, it could be a proper subject for consideration. We are not persuaded, however, that appellant met the appropriate burden of proof. The stipulation, 8(p) merely states:

Secretary of State of Illinois—$3,209.-24. The amount listed was paid to the Secretary of State of Illinois for various services including fees for ministerial and recording services required under applicable state laws of Illinois.

5. The parties stipulated that if it is concluded that the net operating losses are not allowable as deductions under section 172 by reason of section 269, the taxpayer will not be entitled to any recovery in Appeal No. 30,117 because taxpayer's indebtedness to the United States exceeds the amount claimed in these actions.

6. Internal Revenue Code of 1954, 26 U.S.C.:
§ 269. *Acquisitions made to evade or avoid income tax.*

(a) In General.—If—

(1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or

(2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then [such deduction, credit, or other allowance be disallowed]. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.

building materials, coal and ice. Following the merger, stockholders of the loss corporation, Follansbee, obtained 57% controlling interest in the surviving corporation, which continued the former operations of Frontier and Consumer with its corporate name changed to Union Chemical.

■ Although the acquisition of a controlling stock interest in a corporation may serve multiple purposes, if the primary or single most important purpose of the acquisition is tax avoidance or evasion, tax benefits are barred.[7] In Southland Corp. v. Campbell, 358 F.2d 333, 336 (5 Cir. 1966), this court emphasized that section 269 "is applicable

only in certain carefully circumscribed situations—it may be invoked only where there has been an acquisition of *control*, the *principal purpose* of which is evasion or avoidance of taxes." (Emphasis by the court).[8] The statute defines "control" as the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock. *See* 2 Rabkin & Johnson, *Federal Income, Gift & Estate Taxation,* § 11.05.

■ Thus, we are concerned with two lines of inquiry: (a) whether there has been an acquisition of control[9] as con-

---

7. Section 269 was "designed to put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability." H.Rep. No. 871, 78th Cong., 1st Sess., 49 (1944 Cum.Bull. 901, 938). The Senate Report to the Revenue Act of 1943 makes it clear that the proscribed purpose exists "if the evasion or avoidance purpose outranks or exceeds in importance, any other *one* purpose." H.Rep.No.627, 78th Cong., 1st Sess., 59 (1944 Cum.Bull. 973, 1017).

Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.) provides:

§ 1.269–3 *Instances in which section 269(a) disallows a deduction, credit, or other allowance.*

(a) *Instances of disallowance.* Section 269 specifies two instances in which a deduction, credit or other allowance is to be disallowed. These instances [are] described in paragraphs (1) and (2) of section 269(a) * * * * * * * * *

In either instance the principal purpose for which the acquisition was made must have been the evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or persons, or corporation, would not otherwise enjoy. If this requirement is satisfied, it is immaterial by what method or by what conjunction of events the benefit was sought. Thus, an acquiring person or corporation can secure the benefit of a deduction, credit, or other allowance within the meaning of section 269 even though it is the acquired corporation that is entitled to such deduction, credit, or other

allowance in the determination of its tax. If the purpose to evade or avoid Federal income tax exceeds in importance any other purpose, it is the principal purpose. This does not mean that only those acquisitions fall within the provisions of section 269 which would not have been made if the evasion or avoidance purpose was not present. The determination of the purpose for which an acquisition was made requires a scrutiny of the entire circumstances in which the transaction or course of conduct occurred, in connection with the tax result claimed to arise therefrom. For the presumption of a principal purpose of tax evasion or avoidance, see section 269(c) and § 1.269–5.

8. In *Southland* the loss corporation was Caribbean, a shipping business in which Murchison Brothers had a 50 percent ownership. The profitable corporation was Old Cabell's, engaged in the dining and grocery business. Murchison stockholders, the majority stockholders in Old Cabell's, gave to Caribbean their stockholdings in Old Cabell's, and later donated back to Caribbean substantial shares of Caribbean stock. Subsequently the two corporations merged, with Caribbean being the surviving corporation. The court held that the acquisition portion of 269(a) was not met because "immediately before Caribbean acquired control of it, Old Cabell's was controlled by the stockholders of Caribbean, and, therefore, under the express terms of the statute it is not applicable." 358 F.2d at 337.

9. The government urges that this case may turn on the test set forth in Revenue Ruling 63–40: Where there is no change in stock ownership either before the dis-

templated by section 269, and, if so, (b) whether the principal purpose of the merger was to evade or avoid taxes.

It is important to recognize what is not before us. We do not have a single corporation, which, with no change in stock ownership, discontinued a losing business and entered a totally different venture which proved to be profitable; nor do we have a single corporation which experienced a substantial change in ownership in the same taxable year in which the "corporation [had] not continued a trade or business substantially the same as that conducted before the change in the percentage ownership" of the stock. 26 U.S.C. § 382(a); nor did the situation here involve a statutory merger of several corporations, each of which conducted substantially the same business prior to the merger, with no basic post-merger change of stock ownership, as in Libson Shops Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957); nor did a corporation which, after reorganization in which there had not been a 50 percent change in the beneficial ownership of the loss, engage in substantially the same business as in United States v. Jackson Oldsmobile, Inc., 371 F.2d 808 (5 Cir. 1967); nor was there a merger of two corporations, each of which was controlled by the same stockholders prior to the merger as in Southland Corp. v. Campbell, *supra;* nor was this a statutory merger in which the surviving corporation conducted a business substantially different from that previously operated by the loss corporation but with only a minor change in the beneficial ownership of the loss, Rev.Rul. 63–40.

What we do have is: (1) a substantial change in the beneficial ownership of the loss, but not one which exceeds 50 percent, for the original stockholders of Follansbee, who owned 100 percent of the loss corporation stock, became owners of 57 percent of the surviving corporation of the merger; (2) a substantial change in the beneficial ownership of a profitable corporation—these same stockholders who had no ownership before the merger became owners of 57 percent thereafter; (3) a subsequent operation of a business substantially different from that previously conducted by the loss corporation.

Because the Follansbee stockholders who owned 100 percent of the pre-merger loss corporation ultimately owned over 50 percent of the acquiring corporation, and because there was no surrender of 50 percent of the beneficial ownership of the loss, it is suggested that a provision of the Commissioner's Technical Information Release No. 773, *supra,* note 9, if literally applied, would authorize the deduction:

> The Service will not rely on *Libson Shops* under the 1954 Code in any loss carryover case where there has been

---

continuance of its former business activity or after the commencement of its new business activity, the net operating loss deduction is allowable. But where there is "more than a minor change in stock ownership of a loss corporation which acquires a new business enterprise, the Service may continue to contest the deductibility of the carry-over of the corporation's prior losses against income of the new business enterprise." We consider this a simplistic approach. The question is not the *amount* of stock ownership change but the *effect* of the change upon control.

Addressing itself to the question of control, Technical Information Release No. 773 of the IRS dated October 13, 1965, declared: "where there has been both

a 50 per cent or more shift in the benefits of a loss carryover (whether direct or indirect and including transactions having the effect of shifting the benefits of the loss by shifting assets, stock, profit interests or other valuable rights) and a change in business as defined in section 382(a) and the regulations thereunder," the doctrine of Libson Shops Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957) will be applied: "a surviving corporation in a merger may not carryover and deduct pre-merger net operating losses of one business against post-merger income of another which was operative and taxed separately before the merger." Rev.Ruling 58–603, TIR–89, August 25, 1958.

less than a 50 percent change in the beneficial ownership of the loss or where there has been no change in business as defined in section 382(a) and the regulations thereunder. However, the Service will continue to rely on sections 269 and 482, where appropriate, in dealing with the carryover of losses. Revenue Ruling 63–40, C.B. 1963–1, 46 will be modified to the extent inconsistent herewith.

We do not quarrel with this statement as far as it goes. But the mischief in relying solely upon IRS technical releases and revenue rulings is that, for the most part, they speak to the limited fact situations before the Service at that moment. They do not purport to be comprehensive statements of substantive law. From this terse technical information release we cannot conclude that it is only a change in the beneficial ownership of the *loss* which will determine the allowance *vel non* of a net operating loss carryover.

Indeed, this court has deemed it settled that section 269 "is applicable when a 'loss' corporation acquires control of a 'profitable' corporation since the acquiring corporation thereby secures the *benefits* of a loss it would not have otherwise enjoyed. F. C. Publication Liquidating Corp. v. Commissioner, 304 F.2d 779, 781 (2 Cir. 1962)." Southland Corp. v. Campbell, *supra*, 358 F.2d at 336. In F. C. Publication Liquidating Corp., *supra*, the court denied a loss carryover. The loss corporation acquired a profitable corporation, giving the shareholder majority interest in the surviving corporation. There, as here, the business of the loss corporation was not continued; the surviving corporation carried on the business previously conducted by the profitable corporation. Thus, these cases adhere to the principle enunciated in Urban Redevelopment Corp v. Commissioner, 294 F.2d 328, 332 (4 Cir. 1961):

It is now well established that the deduction should be disallowed when * * * it is claimed by either the acquired corporation or by the person who acquired control of the corporation and who will get the benefit of the deduction, albeit, indirectly.

In this case there was a shift of 57 percent of the ownership of a profitable corporation. Therefore, considering solely the question of "control," we are persuaded that there was an acquisition of the control, under section 269, of profitable corporations which gave the acquiring corporation "the benefit of a loss it would not have otherwise enjoyed." F. C. Publication Liquidating Corp. v. Commissioner, *supra*.

Paramount in our approach to the troublesome question of the merger's primary purpose is a recognition that the 26 U.S.C. § 269 does not foreclose the right of an acquiring corporation to take advantage of a past operating loss. Congress did not close the door to a proper and legitimate use of the net operating loss deduction by a successor corporation to a statutory merger. Moreover, even the change in control of either the beneficial ownership of the loss or profitable constituent corporations will not preclude the proper utilization of the operating loss carryover deduction. Congress sought to deny tax benefits only to those corporate acquisitions in which "the primary purpose * * * is evasion or avoidance of Federal income taxes."

Thus, if Follansbee's acquisition of the chemical and building materials companies was motivated by legitimate business reasons, that tax considerations played a role, even an important role, would not defeat the right to tax benefits so long as the tax considerations did not constitute the "principal purpose" of the merger. Only "if the purpose to evade or avoid Federal income tax exceeds in importance any other purpose, [is it] the principal purpose." Treasury Reg. 41.-269–3(a) (2).

There are several significant factors present in the events which gave rise to this appeal. The net operating loss itself is not questioned. It resulted from a sale of Follansbee assets in 1954, which took place prior to the December 23, 1954 merger. As noted, the Commissioner did not question the right of *Follansbee* to use this loss to offset earned income in years prior to 1954. It was only when *Union Chemical*, the successor corporation to the three-company merger, attempted to stand in the shoes of Follansbee, after the merger, and apply this loss to offset post-merger earned income that the Commissioner denied the deduction and made the determination of tax liability.

The taxpayer made the payment under protest, and sued for a refund. In such a proceeding, which is in the nature of a common law action for money had and received, the burden is on the taxpayer to prove that the Commissioner's determination of the tax was erroneous. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). Moreover, in Bobsee Corp. v. United States, 411 F.2d 231, 238 (5 Cir. 1969) (footnote omitted), this court said:

> The burden of proving that tax avoidance was not the principal purpose is on the taxpayer. Theoretically the question of purpose is purely subjective; pragmatically, however, the trier of fact can only determine purpose from objective facts. Thus, unless the taxpayer can muster facts sufficiently plausible to convince the trier of the purity of his motives, the IRS will prevail.

As indicated above, there was no oral testimony adduced at trial. Pertinent facts to this issue were presented in paragraphs 31–34 of the written stipulation. No explicit statement for the purpose of the merger may be gleaned from paragraphs 31 and 32. Paragraph 33 delineated what financial equities were brought to and received by the merged group, and this was expressed only in statements of fair market value and book value. In addition, a reference was made to Follansbee's proxy statement and to a listing of shares. Paragraph 34 described the net operating loss carryover.

There is nothing explicit in the stipulation which describes the purpose of the merger. Therefore, we must look for illumination to Exhibit "C" which is "K. Summary" of the Proxy Statement issued by Follansbee to its shareholders prior to the meeting which approved the proposed merger. From the meager information therein presented, it becomes apparent that Follansbee had converted its assets to cash at some point before the stockholder's meeting.[10] We are not told, nor does the record disclose, the precise date of the sale of assets, or whether the sale was a Follansbee decision separate and apart from the proposed merger with Frontier and Consumer and independent of a proposed merger with any other companies. We are not told whether there was any contemplation of liquidation at the time of the sale of assets.

The proxy statement does disclose, however, the reason for the sale of assets —Follansbee's "relatively insecure position in the steel industry." [11] From the

10. Paragraph 33 indicates that as of September 9, 1954, Follansbee has already a liquid position showing cash of $9,286,-620. Obviously the sale of assets took place before this date.

11. In considering the reason for the sale of Follansbee assets, Follansbee's relatively insecure position in the steel industry was discussed. Mention was also made of the present outlook of the industry generally. The most widely accepted index to conditions in the steel industry is the rate of operations as compared to capacity. Each month since January, 1953, the industry-wide rate of operations has shown, except for minor and relatively insignificant recoveries, a steady decline. * * *

standpoint of the taxpayer's burden at trial, some proof of an association between the sale of assets with the precise merger would have been helpful. Even more persuasive would have been some evidence, if available, that the reason for the *merger* was Follansbee's lack of confidence in the future of the steel industry and a corresponding confidence in the future of the business of the acquired corporations.[12] Absent proof of a relationship between the sale of the assets and the ultimate merger, it becomes difficult to conclude that the stated business purpose of the sale of assets was also the business purpose of the merger.

Conspicuously absent from the trial record was a statement by any Follansbee official, or corporate minutes, serving to contradict the Commissioner's conclusion that the primary purpose of the merger was tax evasion or avoidance of stating affirmatively the actual purpose for the merger. At best, the purpose had to be divined by the court from an examination of a portion of a proxy statement which, *inter alia*, contained the statement:

> As previously stated, the sale and merger will create a carry-forward tax loss estimated by tax counsel at approximately $4,500,000. This means

that the first $4,500,000 of profits earned by the Continuing Corporation through the anticipated successful operation of Consumers' and Frontier will not be subject to Federal Income Tax.[13]

■ Accordingly, in exercising our review responsibilities [14] we have carefully examined the entire record to resolve the issue upon which this appeal will turn: Did the taxpayer meet its burden of proving that the Commissioner's determination was in error? We are persuaded that the taxpayer did not meet its burden. It offered no substantial evidence of business purpose and chose to rest its case on the skeletal, tightly worded factual stipulation and on a proxy statement. We do not intimate an absolute necessity for testimony denying the tax avoidance was the primary purpose of the merger, although such testimony, augmented with affirmative statements or proof of appropriate business purpose, would have formidably strengthened this taxpayer's case. At the very minimum, however, for the taxpayer to have prevailed, some substantial evidence should have been introduced by way of explanation of the business purpose for the merger.

Affirmed.

---

12. The proxy statement included an analysis of Frontier's chemical operation and a sketchy description of Consumer's business.

13. The proxy statement also stated:
   The Continuing Corporation, by virtue of the sale of Follansbee assets, will be in a position to supply substantial amounts of additional needed capital to both Frontier and Consumers.

14. We reject the government's invitation to decide this appeal on the clearly erroneous doctrine. Bay Sound Transp. Co. v. United States, 410 F.2d 505 (5 Cir. 1969). Since there was no oral testimony and no necessity to decide the credibility of witnesses, the fact finder enjoyed no advantages not possessed by us as a court of review.