August 31, 2006

The Honorable Troy Fraser
Chair, Committee on Business and Commerce
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0451

Re: Whether the Lake LBJ Municipal Utility
District No. 2 is eligible for dissolution under
Water Code section 49.321, which permits the
Texas Commission on Environmental Quality
to dissolve inactive municipal utility districts
(RQ-0441-GA)

Dear Senator Fraser:

You ask on behalf of the Lake LBJ Municipal Utility District No. 2 (the "District") whether
the District is eligible for dissolution under Water Code section 49.321, which permits the Texas
Commission on Environmental Quality (the "TCEQ") to dissolve an "inactive" municipal utility
district.[1] You also ask two contingent questions that are dependent on a conclusion that the District
is not eligible for dissolution under section 49.321. *See* Request Letter, *supra* note 1, at 1.

You have attached a letter from the District, which outlines the specific questions. *See id.*
In that letter, the District informs us that it is a conservation and reclamation district formed under
the authority of Water Code chapters 49 and 54 and created for the purposes of financing, owning,
and operating a centralized wastewater collection system for the District's residents and property
owners.[2] Relevant to the question, the District also informs us that even though it has acquired land
for the project, levied a maintenance tax, and secured bond approval from district voters to pay for
some of the project's costs, the wastewater collection system "is impracticable and cannot be
successfully and beneficially accomplished[.]" *Id.* at 2. And since its first elections in January of
2001, the District has not provided any wastewater services. *See id.* Therefore, the District's board
of directors intends for the District to be dissolved. *See id.* at 1–2.

---

[1]*See* Letter from Troy Fraser, Chair, Committee on Business and Commerce, Texas Senate, to Honorable Greg
Abbott, Attorney General of Texas (Feb. 6, 2006) (on file with the Opinion Committee, *also available at*
http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Letter from Charles Danner, President, Lake LBJ Municipal Utility District No. 2, to Honorable Troy
Fraser (Jan. 17, 2006) (submitted as part of Request Letter, on file with the Opinion Committee, *also available at*
http://www.oag.state.tx.us) (hereinafter District Letter).

Water Code section 49.321 permits the TCEQ, after notice and hearing, to "dissolve any district that is *inactive* for a period of five consecutive years and has no outstanding bonded indebtedness." TEX. WATER CODE ANN. § 49.321 (Vernon 2000) (emphasis added). The District questions whether, despite the actions it has taken, it has been "inactive" as this term is used in section 49.321 such that it would be eligible for dissolution under that provision. *See* District Letter, *supra* note 2, at 2–3.

The TCEQ has an established procedure for an "inactive" water district to seek dissolution under Water Code section 49.321. *See* 30 TEX. ADMIN. CODE § 293.131 (2006) (Tex. Comm'n on Envtl. Quality, Authorization for Dissolution of Water District by the Commission). Pertinent here, the rules that govern the procedure require a district seeking dissolution under section 49.321 to file "a statement that the district has been 'financially dormant' for the preceding five-year period . . . ." *Id.* § 293.131(B). Under Water Code section 49.197, "[a] financially dormant district is a district that had . . . $500 or less of receipts from operations, tax assessments, loans, contributions, or any other sources during the calendar year . . . or no cash or investments that exceeded $5,000 at any time during the calendar year . . . ." TEX. WATER CODE ANN. § 49.197 (Vernon 2000). Thus, the TCEQ has, in effect, defined "inactive" to require a district's financial dormancy. Here, the District tells us that it will have between $100,000 and $300,000 in its operating fund that represents excess maintenance and operation taxes that it has been collecting since 2001. *See* District Letter, *supra* note 2, at 4; *see also* TEX. WATER CODE ANN. § 49.107 (Vernon Supp. 2005) (authorizing water districts to levy an operation and maintenance tax). This means that the District is not financially dormant. Consequently, the District is precluded by TCEQ rule from seeking dissolution under Water Code section 49.321.

We therefore answer your contingent question. If the District cannot proceed under section 49.321, it informs us that it will dissolve itself according to Water Code section 54.734. *See* District Letter, *supra* note 2, at 3. Section 54.734 permits a municipal utility district that has not issued "bonds, notes, or other indebtedness" to "dissolve the district and liquidate the affairs of the district as provided by Sections 54.734–54.738 of [the Water Code]." TEX. WATER CODE ANN. § 54.734(a) (Vernon 2002). The District would like to refund to its taxpayers the excess tax monies the District has collected, and it suggests that the liquidation authority provided for in section 54.734 implicitly authorizes it to do so. *See* District Letter, *supra* note 2, at 3. The District asks us, in essence, if section 54.734 does indeed authorize the District to refund its excess taxes on its initiative. *See id.*

Various types of water districts have in their specific statutes authority to voluntarily order dissolution. *See, e.g.*, TEX. WATER CODE ANN. § 51.781 (Vernon 2002) (providing for water control and improvement district's dissolution), §§ 57.321 (providing for levee utility district's dissolution), 58.781 (Vernon 2004) (providing for irrigation district's dissolution). In certain instances, where dissolution authority has been granted to other types of water districts, the legislature has provided specific procedures that such a water district must follow to distribute excess taxes upon dissolution. For example, if a water control and improvement district has collected taxes in excess of the amount required to liquidate its obligations, the district is specifically required to pay the excess "ratably to the county treasurer or treasurers of the county or counties in which [it] was located." *Id.* § 51.791 (Vernon 2002). And in another instance, a commissioners court is required—upon the voluntary

dissolution of a levee improvement district—to "order returned to the taxpayers ratably any unspent taxes that have been levied and collected in the name of the district in anticipation of an issue of bonds." *Id.* § 57.323 (Vernon 2004).

In the case of a municipal utility district, the legislature has expressly conferred on it the power to voluntarily dissolve itself and the duty to liquidate its affairs if the District does dissolve itself. *Id.* § 54.734 (Vernon 2002). And the legislative requirement to liquidate its affairs creates for the District a plain duty to, among other things, dispose of its assets. *See Farmers State Bank and Trust Co. v. Brady*, 152 S.W.2d 729, 732 (Tex. 1941) (bank commissioners' duty to "liquidate the affairs" of an insolvent bank was not fulfilled until the bank's assets had been disposed of and the proceeds delivered to those legally entitled to them). But there is no specific procedure in Water Code chapter 54 for a municipal utility district to, upon dissolution, dispose of assets like excess taxes. *See* TEX. WATER CODE ANN. §§ 54.001–.813 (Vernon 2002 & Supp. 2005).

You ask specifically about the District's authority upon dissolution to refund excess taxes to its taxpayers. *See* District Letter, *supra* note 2, at 1–3. In one instance, the legislature has considered refunding to taxpayers excess taxes upon a levee improvement district's dissolution to be an appropriate method of liquidating that type of water district's affairs. *See* TEX. WATER CODE ANN. § 57.323 (Vernon 2004). We can find nothing that would bar the District from choosing this particular method of liquidating its affairs upon dissolution. And in refunding the excess taxes, the District will be conforming to a policy of the Water Code as evidenced by section 57.323. Thus, in answer to your second question, we conclude that upon dissolution the District, at its discretion, might choose to refund excess taxes to its taxpayers in order to accomplish an express duty conferred on it by the legislature.

Because we have determined that the District has the authority to return excess taxes to the district's taxpayers, we address its last question, which was contingent on this result. The district asks last about the proper method for refunding taxes upon dissolution. *See* District Letter, *supra* note 2, at 4. As we have said, the legislature has left it to the District to decide the proper method of liquidating its affairs upon dissolution. To the extent the District wishes to accomplish that by refunding excess taxes, then it is for the District to determine the proper method, considering relevant facts and consistent with the constitution and other statutory law, and subject to judicial review. It is not within the purview of an attorney general opinion to make such determinations for a governmental body with this type of discretionary authority. *See* Tex. Att'y Gen. Op. No. GA-0353 (2005) at 5 (concluding that where a commissioners court had discretionary authority to apportion certain funds to a hospital district, it was for the commissioners court and not an attorney general opinion to determine the appropriate method for apportioning those funds).

### S U M M A R Y

The Lake LBJ Municipal Utility District No. 2 is ineligible by operation of Texas Commission on Environmental Quality rule for dissolution under Water Code section 49.321. If the District dissolves itself under Water Code section 54.734, which provides for voluntary dissolution, then it may refund excess taxes to its taxpayers in order to accomplish the District's duty to liquidate its affairs upon dissolution. If the District chooses upon dissolution to distribute excess taxes to its taxpayers, then the District is responsible for creating a method by which the taxes are returned to its taxpayers.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee